Leonard C. SORENSON, Plaintiff-Appellant,

v.

REGIONAL TRANSPORTATION DISTRICT, Defendant-Appellee,

and

State Board of Land Commissioners, Additional Party Defendant-Appellee.

No. 85CA1605.

Colorado Court of Appeals, Div. III.

July 9, 1987.

Rehearing Denied Aug. 13, 1987.

Certiorari Denied Nov. 9, 1987.

Eric Pierson, Denver, for plaintiff-appellant.

Diane Myndie Brown, Denver, for defendant-appellee.

Duane Woodard, Atty. Gen., Charles B. Howe, Chief Deputy Atty. Gen., Richard H. Forman, Sol. Gen., Martha E. Rudolph, Asst. Atty. Gen., and Hall & Evans, P.C., Alan Epstein, Denver, for additional party defendant-appellee.

VAN CISE, Judge.

Plaintiff, Leonard C. Sorenson, appeals from judgments entered against him in his action against defendants, Regional Transportation District (RTD) and the State Board of Land Commissioners (State Board), arising out of disputes relating to a

parcel of land (the property) in downtown Littleton. This property, originally owned by the State of Colorado, was leased by the State Board to Sorenson, and was transferred by the State to RTD in exchange for RTD land of equivalent value in Broomfield. We affirm in part and reverse in part.

On September 1, 1972, Sorenson and the State Board entered into an agreement whereby Sorenson leased the property for a term of 20 years. The rental was seven percent of the appraised value, payable annually in advance, "subject to review and revision based on a reappraisal of the land at the end of each five years from the date of this lease." The State reserved:

"The right at any time to sell said premises, as provided by law. In the event of a decision by the lessor to sell the premises, the lessee shall have an opportunity and adequate time to remove improvements and other property belonging to him, or shall be reimbursed for the value of said improvements and property as determined by appraisal."

The improvements consisted primarily of a small commercial building erected by Sorenson on the leased land.

RTD became interested in the property as the site for a transit center. In late 1978, it advised Sorenson that it was considering acquisition of it. In mid–1980, Sorenson relocated his business and subleased the property.

In March 1982, the general assembly passed, and the governor approved, House Bill No. 1115 (HB 1115) authorizing the State Board to make the exchanges of properties with RTD. The State Board then conveyed the property to RTD and advised Sorenson that his lease was terminated.

Sorenson, through his sublessee, remained in possession of the property. In September 1982, Sorenson tendered, as the 1982–1983 annual rent, the amount of the 1977 rental. RTD advised Sorenson that the rent was being increased to a figure that represented 12%, rather than 7%, of a reappraised value. He did not pay the increased amount.

On August 1, 1983, RTD served a notice to vacate on Sorenson and on his sublessee, advising them that their "tenancy at sufferance" was terminated as of August 4. No reason for the termination was contained in the notice. In September 1983, Sorenson tendered, as the 1983–1984 annual rent, the same amount he had paid in 1977.

On August 5, 1983, Sorenson commenced this action against RTD. On August 23, RTD filed a forcible entry and detainer (FED) action against Sorenson and his sublessee, seeking possession of the property and unpaid rent. These cases were consolidated, and the State Board was joined as an additional defendant in Sorenson's action.

In his amended complaint, Sorenson asserted six claims: (1) against RTD for damages for interference with his lease contract with the State Board; (2) against RTD seeking to estop it from terminating his tenancy or from refusing to pay for his losses; (3) against RTD for damages for termination of his lease; (4) against both defendants for alleged violations of his rights under §§ 36–1–124 and 36–1–125, C.R.S., to receive the appraised value of his improvements on the leased property; (5) against the State Board for damages for breach of the lease agreement, including the value of the improvements and all other damages; and (6) against both defendants for damages for civil conspiracy. Numerous affirmative defenses were raised.

The proceedings were bifurcated. Following a trial on the question whether RTD was entitled to possession under the FED laws or whether it should be estopped from obtaining an order of possession, the court in April 1984 held that Sorenson breached the lease when he failed to pay the revised rental when due and, therefore, RTD was entitled to possession. Also, the court determined HB 1115 was constitutional and that this authorized the State Board to terminate Sorenson's tenancy. As to the estoppel claim, the court resolved the disputed fact issues and held there was no basis for estoppel in the dealings between Sorenson and RTD between 1978 and 1982.

Thereafter, on motions of the State Board and RTD, the court in February 1985 granted summary judgments against Sorenson on claims (1) and (6) as sounding in tort and, therefore, barred for lack of timely notice as required under the Governmental Immunity Act, on claim (2) for lack of a factual basis for estoppel, and on claim (4) because the land transfer was not a "sale" and, therefore, no rights accrued to Sorenson under the statutes pertaining to sale of leased land. Claim (3) had been decided against Sorenson in the April 1984 order. As to claim (5), the court in its April 1984 order had determined that the title transfer pursuant to HB 1115 gave the State Board the right to terminate Sorenson's tenancy; this disposed of the damages claim other than for the value of the improvements. The court held that summary judgment as to the reimbursement for improvements portion of claim (5) was not appropriate, there being disputed material fact questions as well as contract rights that were activated when the lease was terminated.

In October 1985, based on a stipulation of the parties, the court found that the value of Sorenson's improvements on the property was $12,900 and that the amount owed to RTD by Sorenson for his use of the property from March 30, 1982, when RTD acquired title to the property, until April 25, 1984, when the court ordered that RTD was entitled to possession, was $5,400, leaving a net of $7,500 owed to Sorenson by RTD. This amount was placed in a two-signature interest bearing savings account pending the outcome of this appeal.

Sorenson originally filed this appeal with the supreme court, claiming that passage of HB 1115 was an unconstitutional deprivation of a property interest. The supreme court transferred the case to this court, after deciding that Sorenson had not challenged the constitutionality of a statute. *See* §§ 13–4–102 and 13–4–110(2), C.R.S.

He now asks us to declare HB 1115 unconstitutional, to reinstate his fifth claim against the State Board for damages (in addition to the value of his improvements, less unpaid rent, already awarded to him in the October 1985 order) resulting from State Board's breach of the lease agreement in canceling his lease, and to order a trial on that claim. He does not ask to be restored to the premises, nor does he challenge the trial court's disposition of his other claims or its ruling in RTD's FED action.

We agree with the trial court in its analysis and its conclusion that Sorenson failed to overcome the presumption of constitutionality of HB 1115. However, we agree with Sorenson that the State Board breached the lease agreement in terminating the lease on the transfer of the property to RTD.

The parties are in agreement, and therefore we accept their interpretation, that the lease provision pertaining to the State Board's reserved right to sell the property "as provided by law" gave the Board the right to terminate on such a sale. However, the transfer of the property from the State Board to RTD in exchange for RTD land of equivalent value was not a "sale" of the property "as provided by law." *See* §§ 36–1–124 and 36–1–125, C.R.S., for the requirements for a sale of property by the State Board.

Also, there is no clause in the lease providing a right to terminate on disposition by the State Board other than by sale. And, HB 1115 refers to and authorizes an "exchange," not a "sale," and contains no language pertaining to termination of existing leases or to any requirement that title to the exchanged properties be free and clear of existing leases.

When the property was conveyed to RTD, it took title subject to Sorenson's existing lease. *See Veatch v. Philip J. Lasky, Inc.,* 29 Colo.App. 31, 477 P.2d 468 (1970). The State Board had no authority, by statute or lease, to terminate the lease merely because title to the property had been transferred. *See Fidelity Bond & Mortgage Co. v. Paul,* 90 Colo. 94, 6 P.2d

462 (1931). Therefore, the State Board breached the lease, and is liable for the damages, if any, resulting therefrom.

The judgment in favor of the State Board and against Sorenson on his claim for damages, over and above the value of improvements, for breach of the lease is reversed and that cause is remanded for further proceedings. The other judgments in this case, not having been contested, are affirmed by operation of law.

CRISWELL and SILVERSTEIN *, JJ., concur.

---

* Sitting by assignment of the Chief Justice under provisions of the *Colo. Const.,* art. VI, Sec. 5(3), and § 24–51–607(5), C.R.S. (1982 Repl. Vol. 10).